## ROSS v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.   June 12, 1903.)

1. MUNICIPAL CORPORATIONS—CONTRACTS—PERFORMANCE—EVIDENCE.

   Evidence in an action for work done for a city under a contract providing that no payments should be made until the completion of the work had been certified by the engineer in charge thereof, and approved by certain officers, examined, and *held* to sustain a finding of the referee that plaintiff had fully completed the work substantially according to the terms of the contract, authorizing a recovery, though the engineer in charge refused to certify that the work was completed, and the officers refused to approve the same.

Appeal from judgment on report of referee.

Action by J. Stewart Ross, as executor of James F. Gillen, deceased, against the city of New York. From a judgment entered on the report of the referee in favor of plaintiff, defendant appeals.   Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

James McKeen (James W. Covert, on the brief), for appellant.
J. Stewart Ross, in pro. per.

GOODRICH, P. J.   This action was brought to recover a balance claimed to be due to James F. Gillen under a contract made between him and the board of sewer commissioners for the village of Jamaica, dated April 28, 1897, for the laying of a sewer in that village.   The work was to be completed on or before October 1, 1897, and no payments were to become due until the completion of the work had been duly certified by the engineer in charge of the work, and approved by said commissioners.   The complaint alleged that the plaintiff fully performed and completed his contract on or before December 31, 1897, and that there became due to him $137,630.95, of which there had been paid $100,639.58, leaving due $36,991.37; that the village of Jamaica was consolidated into the city of New York by the Greater New York Charter on January 1, 1898; that the power of the engineer of the commissioners to certify the work and of the commissioners to approve was vested in the commissioners of sewers of the defendant, and that the latter "has unreasonably and improperly refused to certify to the completion of said work of the plaintiff as having been fully completed, and of the materials furnished as having been fully furnished, as required by said contract." The city denied that Gillen fully performed his contract, but alleged that in the year 1898 he abandoned the work, and neglected and refused to continue the same, although requested to continue and complete his work; and that no certificate was ever given by the engineer in charge of the work, nor by his successor, for the reason that the contract was not properly performed according to the plans and specifications.   It is conceded by the learned corporation counsel that the material furnished for the work was of good quality and proper for the use intended, and he confines his objection to the method of laying, connecting, and cementing the pipes in the joints at certain parts of the work, which he claims was negligently and

improperly performed. The contract provided that the pipes should be laid so that there would be no sagging between them, with close joints, having a gasket of jute between the spigot and hub, the space to be then entirely filled in with compressed mortar, sides and top, and every precaution taken to secure a water-tight joint. Upon this question there were many witnesses examined and a large volume of testimony taken. There was evidence that this part of the specifications was not complied with, and there was evidence that it was. A careful consideration shows that at most the real criticism of Gillen's work lies in the claim that in the annular connection or joint between the pipes the cement was used only in the upper part of the joint, and not all the way around, more especially down to and at the bottom, and that jute was not sufficiently used. Even this criticism is confined to work upon a space of a few hundred feet on Lincoln avenue, the whole sewer being 29 miles in length. The pipe was not round, but pear-shaped, the broadest part at the top and the pointed part at the bottom. The spigot was only one-fourth or three-eighths of an inch smaller than the hub, and was expected to be driven or butted home so as to fit closely. It is manifest that, after being thus laid, it would be somewhat difficult to drive jute or cement into the aperture without breaking the pipe, which was not hard-baked, like vitrified pipe. There was very little testimony offered by the city as to the condition of the pipes and the cement in the joints while the work was being done or while the pipes lay in their place in the trench; but there was evidence that after Gillen, upon the demand of the city authorities, had refused to do any further work, an examination and inspection was had, and the sewer found defective, and that a contract was given by the city to one Caccavajo to take up and relay the pipes in Lincoln avenue for several hundred feet. He opened the trench, and took up the old pipes, usually breaking them before removal from the trench, because it was cheaper to remove them in that way than to remove the pipes whole; and there is testimony that in a number of places there was no appearance to indicate that jute and cement had been used at the bottom of the joints. On the other hand, there is evidence that jute was used wherever it was practicable to use it, and that joints were properly cemented, and that there was a large flow of natural water from springs along the line of the sewer, so great that at times after Gillen had finished his work the outflow entirely filled the interior of the pipe and also ran alongside the pipes; and that such a flow was calculated, after some time, to remove the cement and destroy a close joint. It is to be observed that the pipes were laid under the supervision of the engineer of the sewer board and the village inspectors, who made some complaints from time to time, which resulted in Gillen's redoing parts of the work; but they certified to the work during its progress, these certificates being approved by the sewer commissioners, and amounting on December 1, 1897, to $125,799.48 at the contract prices, and Gillen received over $100,000 on these certificates. The last of these were given after the work had been done on Lincoln avenue.

Gillen produced the evidence of himself, his superintendent and foreman, and of two assistant engineers appointed by the village sewer

commissioners to supervise the work, in order to show that it was properly done in accordance with the specifications. There were a number of inspectors on the work in the employ of the commissioners, and who were not produced by either party. The defendant produced as a witness the chief engineer of the village sewer commissioners, who admitted that the material, pipes, and cement were of the best quality, and that when he made complaint to Gillen during the progress of the work his requirements were complied with. It also offered the evidence of competent engineers and others who examined Gillen's work a year after its completion, and their testimony is to the effect that in several places along Lincoln avenue the union of the pipes was improperly and imperfectly done, that jute was not used nor cement properly applied at the joints of the pipes in many places, and that the work was not in accordance with the contract. A careful examination of the whole evidence, however, convinces me that there was a fair question of fact for the decision of the referee whether Gillen had performed his work according to the specifications; and while it is evident that the sewer on Lincoln avenue, when the pipes were taken up by Caccavajo, about a year after Gillen finished his work, were not in perfect condition, there was evidence to justify the referee's finding that Gillen "fully completed the same substantially according to the terms and conditions" of his agreement "on or before December 1, 1897," and there is no such preponderance of evidence as to require a reversal of the referee's finding of fact upon this question.

The refusal of the defendant's sewer commissioners to certify the completion of Gillen's contract, in view of the referee's finding, was, therefore, unreasonable. The rule on this subject is clearly stated in Doll v. Noble, 116 N. Y. 230, 232, 22 N. E. 406, 5 L. R. A. 554, 15 Am. St. Rep. 398, where the court quoted from the opinion in Bowery National Bank v. Mayor, etc., 63 N. Y. 336, as follows:

" 'It was necessary for them [the plaintiffs] either to prove upon the trial the making of such certificate, or to show that it was refused unreasonably and in bad faith. It was unreasonable to refuse it if it ought, in the contemplation of the contract, to be given. In such contemplation it ought to have been given when, in any fact, and beyond all pretense of dispute, the state of things existed to which the water purveyor was to certify, to wit, the full completion of the contract in each and every one of its stipulations.' "

I have examined with care the various exceptions of the defendant to the admission or exclusion of evidence, and am unable to find any which affects the result so far as to constitute reversible error.

The judgment should be affirmed, with costs. All concur.